(73 App. Div. 511.)

### HILBRAND v. DININNY.

(Supreme Court, Appellate Division, First Department.   June 20, 1902.)

1. CONTRACTS—TERMS—EVIDENCE.
  Plaintiff claimed that under his contract with defendant he was to furnish labor and material for repairing defendant's country house, the workmen to be taken from the city, and plaintiff to be reimbursed and paid a certain per cent. Plaintiff testified that he told defendant that the men would work 10 hours a day, as it would be a saving on the board. It was shown that defendant had inquired where the men were stopping, and what board the foreman was paying for them. *Held* not to show that defendant was to reimburse plaintiff for board.

2. SAME—CUSTOM.
  A custom, where men were employed without the city, to pay their board, was not binding on defendant, so as to render him liable therefor, where he had no knowledge of the custom.[1]

3. SAME—TERMS—EVIDENCE.
  Plaintiff claimed he was to be reimbursed for wages at city rates, and defendant that he was only to be liable for wages at the rate paid in the country. A witness for defendant, who overheard the agreement, testified that defendant refused to pay city rates, but plaintiff's foreman testified plaintiff had inquired what wages the men were getting, and defendant knew the men employed were from the city. *Held*, that defendant was liable for wages at city rates.

Appeal from judgment on report of referee.

Action by Rudolph Hilbrand against Ferral C. Dininny. From a judgment for plaintiff granting insufficient relief, he appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Henry H. Whitman, for appellant.
John J. Adams, for respondent.

LAUGHLIN, J.   Two causes of action are set forth in the complaint. The first cause of action is to recover $882.28 for work, labor, and services performed and materials furnished in and about fitting up a dwelling house for the defendant at Ninety-First street and Riverside Drive, in the city of New York. The answer admits the allegations constituting this cause of action, but pleads payment. It appears that, after the plaintiff rendered a bill for the materials and services embraced in this cause of action and for the services and disbursements included in the second, the defendant paid the plaintiff the sum of $4,000. The testimony of the defendant is to the effect that at the time of this payment he had before him the bill for the services and materials constituting the first cause of action, the correctness of which he admitted, and that in making the payment he stated, in substance, that he desired to pay this bill, and allow the balance to be applied on the other bill. The plaintiff's superintendent, to whom the payment was made, denies that anything was said with reference to the application of the payment on the first bill, and the plaintiff maintains that he exercised his right, in these circum-

[1] See Customs and Usages, vol. 15, Cent. Dig. § 23.

stances, to credit the entire payment on the second bill, which, however, it is conceded was disputed by the defendant. This question of fact as to the application of the payment the referee has resolved in favor of the defendant, for he awarded judgment for the plaintiff in the sum of $600 only, and interest thereon, together with costs, down to the time when the defendant made a formal offer of judgment in favor of the plaintiff for $750. The defendant being then entitled to the subsequent costs, the plaintiff's recovery has been reduced to the amount of $120.86.

The second cause of action is based on a parol agreement by which the plaintiff claims that he was to purchase the materials and employ labor in the performance of work on the defendant's house and barn at his summer residence in Suffern, N. J., and to purchase furniture therefor, and to be reimbursed for those disbursements, and to receive as his compensation 10 per cent. on the amount expended for labor and 5 per cent. on the amount expended for materials and furniture. The plaintiff showed, and it was not controverted by the defendant, that he expended the sum of $6,729.54 for material and furniture (the charge for painters' services was included in this item), the sum of $3,529.02 for the labor of carpenters, cabinet makers, varnishers, and machinists, and $839 for their board, and $150.48 for their railroad fare from New York to Suffern, and $58.42 for freight and express charges on materials shipped. The plaintiff claims the right to recover for all of the disbursements, and in addition 10 per cent. on the amount expended for labor, excluding the disbursements for board, railroad fare, and freight and express charges, and 5 per cent. on the amount expended for materials and furniture, except $2,633.10, for which no percentage is claimed. The defendant has paid the plaintiff the sum of $9,000 to apply on the claims embraced in the two causes of action. The action is brought to recover the balance. Most of the men employed on this work were brought from the city of New York, where the plaintiff was engaged as contractor and builder, and they were paid at the prevailing rate of wages in New York, except that double pay was not allowed for extra time. The rate paid was $4.37 per day of 10 hours for carpenters, $3.75 per day of 10 hours for painters, and $3 per day for cabinet makers, $2.80 per day for varnishers, and $5 per day for machinists, it not being stated how many hours constituted a day for the last three. The defendant concedes that he agreed to reimburse the plaintiff for the amount expended for labor and materials and furniture; but he contends that it was the understanding that the rate of wages to be paid was the prevailing rate of wages at Suffern, which it appears ranged from $2.25 to $2.75 per day for 10 hours' work. The defendant also concedes that he was to pay the plaintiff for services 10 per cent. on the amount expended for labor and 5 per cent. on the amount expended for materials and 5 per cent. also on the amount expended for furniture where a trade discount was obtained by the plaintiff. The contract was negotiated between the defendant and one Kidd, the plaintiff's superintendent. The plaintiff was a well-known contractor and builder in this city, and was connected with the construction of the University Club, the New York Life Insurance Building, and other

large and extensive buildings. The father of the defendant's son-in-law, Mr. Tuck, was vice president of the New York Life Insurance Company; and the plaintiff was recommended to the defendant by Mr. Tuck, the son-in-law. Early in the month of June the plaintiff was requested to go to the defendant's summer residence for the purpose of making an estimate upon the work which defendant desired to have performed. His superintendent, Mr. Kidd, looked over the buildings, and submitted an estimate under date of June 9, 1898, to do the work therein specified "all for the sum of about $4,500." Subsequently Kidd called at the defendant's office, and it is conceded that the defendant rejected this estimate on the ground that it was too high. Thereupon a proposition was made either by Kidd or the defendant, their testimony differing on this point, to have the work done on a percentage basis, the plaintiff to be reimbursed for the amount expended for labor and materials, and to be paid for his services 10 per cent. on the labor and 5 per cent. on the materials purchased. This was agreed upon by both parties. It is conceded that nothing was said as to who should pay the board of the men or their railroad fares. On the subject of wages the defendant testifies: "I told Mr. Kidd I would not pay the prevailing rate of wages in New York City for country work, and that the workmen at Suffern worked ten hours a day for a day's work. He said he thought he could get the men to work on that basis." Mr. Kidd denies that the defendant stated that he would not pay the prevailing rate of New York wages for country work, but testifies: "I told Mr. Dininny our men would work ten hours a day in Suffern. It would be a saving on the board; it would be two hours more work for each." The defendant's son-in-law, Mr. Tuck, was in the office at the time of this conversation, but did not take part in it. He claims to have overheard it all, and testifies that the defendant said that he would not pay union wages, and expected the men to work 10 hours a day, and then, in answer to the question, "And pay the prevailing rate of wages at Suffern?" he answered, "At Suffern, and not at New York." He testified subsequently, however, that the defendant's version of the conversation, which was merely that he would not pay the New York rate of wages, was correct. The referee has disallowed the disbursement for the board of the men and their railroad fares, and has allowed a recovery only on the basis of the rate of wages prevailing at Suffern. The plaintiff employs union men, and it was shown to be the custom to pay the railroad fares and board of such men when employed on work outside the city. It does not appear that a different rate of wages prevailed, or a different custom existed, with reference to nonunion men. It was not shown, however, that the defendant knew of this custom, and it would not be binding upon him in the absence of such knowledge. The statement made by Kidd to the effect that the men would work 10 hours a day, and that it would be a saving on their board, is altogether too indefinite to be the basis of an indication as to who was to pay the board. The only other evidence on the subject is the defendant's knowledge that these men were traveling back and forth on the railroad, and an inquiry made by him with reference to where they were stopping, and what the

foreman personally was paying for board. We are of opinion, therefore, that the referee was right in disallowing the claim for board and railroad fares, but we think he was in error in holding that the plaintiff could only recover that part of his disbursements for labor which would have been required at the prevailing rate of wages at Suffern. This finding we regard as against the weight of the evidence. It is opposed by all the probabilities of the case. The defendant was a resident of New York, and engaged in the coal and iron business here. He desired his country residence and barn altered, repaired, decorated, and painted, and fitted with electric lights and bells. In short he desired the work done by a prominent city builder, who knew what would be necessary for the comfort and convenience of a New York business man for a summer country home. The time was short, and he wished the work done quickly. As the work progressed, he materially enlarged the plans, and extended the work far beyond what was contemplated when the original estimate was made. It does not appear that he at that time knew the prevailing rate of wages at Suffern, but it is manifest that he knew that the rate was lower than that prevailing in the city. The conversation at the time the agreement was made, according to his own version of it, would indicate that he expected the plaintiff was to take his own workingmen from the city; but, however that may be, he was aware of the fact that the men were taken from the city, as he saw them going back and forth from time to time from the early commencement of the work. According to the testimony of the plaintiff's foreman, the defendant inquired of him, and was told the wages the men were receiving, but this is controverted by the defendant.

It must be borne in mind that the defendant conceded that he was to reimburse the plaintiff for the amount expended for labor, and there is nothing to indicate that he had any expectation that the plaintiff was to bear personally any part of the cost of labor. The defendant did not see fit to let out the contract, but he wanted it done under the direction and superintendence of the plaintiff, who was to advance the money for the labor and materials, and be reimbursed therefor, and receive the percentages for his services, which the evidence shows was very moderate compensation. In view of the nature of this contract, if the agreement as to the rate of wages was as defendant contends, it is improbable, we think, defendant would have allowed this work to progress without making any inquiry as to the rate of wages at Suffern, or having an understanding with the plaintiff in regard thereto, or ascertaining what the plaintiff was paying the men, all of which he admits that he did not do. Any man of ordinary prudence must have known in these circumstances that a misunderstanding would be inevitable unless he was to pay what the men were actually receiving. If his understanding was as he claims, it was his duty to the plaintiff to call attention to the fact, and avoid a misunderstanding and personal loss to the plaintiff, and we think it probable that that is what he would have done in those circumstances. It is likewise improbable that the defendant believed that skilled workmen during a busy building season would be willing to accept employment in the country, and pay their own board and expenses away

from home, at less wages than they were receiving in the city. From the plaintiff's standpoint we think it clear that he did not intend to pay this difference in wages out of his own pocket. The percentages he was to receive could upon no theory justify that inference, for the difference in the rate of wages exceeds those percentages. Moreover, it appears that the plaintiff, as an employer of union men, would have had all his other building work in the city stopped by a strike if he paid less than the union rate of wages. Of course, the plaintiff was aware of this, and, while the defendant may not be chargeable with knowledge of it as a matter of law, these matters are common knowledge nowadays, and he would be likely to know that differences would arise. It is extremely improbable that the plaintiff would have made such a contract, and, if no other inference were admissible, we would be inclined to hold that the minds of the parties did not meet; but we think that it was fully understood and agreed that plaintiff was to take his employés from New York, and that they were to receive the rate of wages paid in New York for similar services. The arrangement by which the plaintiff was to furnish furniture for the defendant was made some time after the agreement to do the work. The defendant learned that the plaintiff could get a trade discount, and requested the plaintiff to purchase the furniture for him, agreeing to pay, as he claims, 5 per cent., where a trade discount was obtained, but agreeing to pay, according to the testimony of Kidd, 5 per cent. whether a trade discount was obtained or not. The furniture was purchased in the name of the plaintiff, and paid for by him. The defendant, however, selected it. It appears that some stores allowed a trade discount to builders from 5 to 25 or 30 per cent., and other stores allowed none. Some of the furniture was purchased at stores where no discount was allowed. We infer from the evidence that the plaintiff claimed a right to percentages on these purchases, but it would seem that he abandoned the claim upon objection being made by the defendant. If this be not so, however, that was at most a question of fact on which we would not be disposed to interfere with the finding of the referee. But for the reasons already stated the judgment should be reversed, and a new trial granted before another referee, with costs to appellant to abide the event. All concur.